IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD SATERSTAD and** | : | **Civil No. 1:20-CV-00765** |
| **MARY SATERSTAD** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DERRY TOWNSHIP,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the Court is Defendant Derry Township's motion to dismiss for failure to state a claim. For the reasons set forth below, the motion will be granted in part and denied in part.

## I.    BACKGROUND

This story began in the Wild West of the internet—Craigslist.com. In July 2018, Plaintiffs Edward Saterstad and Mary Saterstad purchased a vehicle from two individuals on Craigslist. During the sale, the sellers represented to the Saterstads that the vehicle had a clean title, but when the title later arrived by mail it showed that the car had actually been flood-damaged. (Doc. 1-1, ¶ 10.) The Saterstads tried getting their money back, but the sellers went radio silent. (*Id.* ¶ 11.) After doing some private detective work, the Saterstads discovered that the sellers concealed

their true identities during the sale and that it was not the first the time they tried selling a car under fake names. (*Id*. ¶¶ 11-16.)

As a result, Plaintiffs filed a police report with Detective Dotts and Patrolman Cotton with Township's police department. (*Id*. ¶ 18.) After they filed the report, Mr. Saterstad followed up with Detective Dotts by email approximately nine times between July and August 2018, in which he asked for updates on the case and politely urged the department to pursue the matter criminally.[1] (*Id*. ¶¶ 18-26.)

Detective Dotts responded several times, also politely. On July 26, Detective Dotts informed Mr. Saterstad that he would try to help them track down the individuals involved in the fraud but that the department would not be pursuing the case as a criminal matter. (*Id*. ¶¶ 27-28.) On July 31, Detective Dotts told the Saterstads that he left a voicemail for the sellers to call him back but that he had not had the time to look any further for them. (*Id*. ¶ 31.) One week later, after several follow-up emails from Mr. Saterstad asking for clarification, Detective Dotts replied with the following message:

> The Dauphin County District Attorney's Office has determined this is not a criminal incident and you should pursue it through the civil courts. At the current time I have a case load of 17 criminal investigations. As a courtesy to you, I will attempt to contact the sellers of the vehicle to

---

[1] Mr. Saterstad also visited the police station once and was informed that Detective Dotts was out of town. Shortly thereafter, Detective Dotts followed up with Mr. Saterstad by email, confirming that he was in Washington D.C. to attend a conference and informing Mr. Saterstad when he would be returning.

induce a refund. This will be as time permits based on the prioritization
of my cases.

(*Id.* ¶ 35.)

In response, Mr. Saterstad asked Detective Dotts whether the district
attorney's office "was made aware that these people used a false name and signature
on the official Pennsylvania vehicle transfer paperwork," but he never received a
reply. (*Id.* ¶ 36.) According to the complaint, Mr. Saterstad's repeated, albeit
respectful, insistence to Detective Dotts that the Craigslist matter be pursued
criminally antagonized Detective Dotts and other Township employees to such a
degree that the Township's law and code enforcement officials began a campaign of
retaliation against the Saterstads, which was marked by three separate incidents.

The first incident occurred in May 2019. The complaint alleges that Mr.
Saterstad was driving his car to the Days Inn workout room when he noticed a broom
wedged between two trash cans. (*Id.* ¶ 48.) Mr. Saterstad thought the broom was
being thrown away, so he pulled over and placed it in his car. (*Id.* ¶ 49.) As Mr.
Saterstad was driving away, he noticed a man come to the street and look his way,
so he turned the car around and went back to ask about the broom. (*Id.* ¶ 50.) The
man, who was actually a day laborer at the property, informed Mr. Saterstad that the
broom was not in fact being discarded. (*Id.* ¶ 52.) He thanked Mr. Saterstad for
coming back to return the broom, and Mr. Saterstad proceeded to the Days Inn. (*Id.*)

Soon thereafter, the owner of the property and broom learned of the incident and managed to track down Mr. Saterstad's car in the Days Inn parking lot.  (*Id.* ¶¶ 56-57.) The broom owner entered the Days Inn and told Mr. Saterstad's wife, who was working at the front desk, that he was a friend of the Township's police chief and that he was going to call the police about Mr. Saterstad stealing the broom. (*Id.* ¶ 58.)

Later the day, Officer Eckenrode and other officers with Township Police Department came to the Saterstads' home and asked Mr. Saterstad about what happened. (*Id.* ¶¶ 64-68.) Mr. Saterstad relayed his version of the events, as described above, and Officer Eckenrode responded that "he was told that [the] broom was taken from [the] garage and that workers had to chase Saterstad down to get the broom back." (*Id.* ¶ 76.) Mr. Saterstad denied that was the case, but Officer Eckenrode nevertheless arrested Mr. Saterstad by handcuffing him, placing him in a squad car, and transporting him to the police station. (*Id.* ¶¶ 77-78.) During the drive to the station, Mr. Saterstad complained about his handcuffs being too tight, but Officer Eckenrode refused to pull over and loosen them. (*Id.* ¶ 81.) At the police station, Mr. Saterstad had his fingerprints and pictures taken and was thereafter released. (*Id.* ¶ 83.)

The following day, Mr. Saterstad was formally charged with "Theft by Unlawful Taking – Movable Property."[2] (*Id.* ¶¶ 84, 89.) At a subsequent preliminary hearing on the matter, Officer Eckenrode testified that the street from which Mr. Saterstad took the broom was a dead-end street and private driveway, which the complaint avers was not true. (*Id.* ¶¶ 93-94.) The complaint also alleges that Defendant Eckenrode falsely testified that he mirandized Mr. Saterstad at the police station and that Mr. Saterstad said he did not want to speak. (*Id.* ¶ 96.) According to the complaint, the judge at the preliminary hearing relied on this testimony in part when he "bound the case over as a misdemeanor to the Court of Common Pleas, commenting that this was a 'dead-end alley,' and that he didn't see any reason Saterstad should be there." (*Id.* ¶ 107.) After the hearing, Mr. Saterstad petitioned the Dauphin County Court of Common Pleas with a Writ of Habeas Corpus, and in November 2019, the trial judge dismissed the charge against him. (*Id.* ¶ 108.)

According to the complaint, the second incident of retaliation by the Township occurred in late June 2019. One day after Mr. Saterstad walked his two small dogs, Pepper and Paige, across the street to a neighbor's house and returned home, Township Community Service Police Officer Miller visited the Saterstads and

---

[2] The complaint also alleges that after Mr. Saterstad was charged, a member of the Township police department visited Mrs. Saterstad's supervisor at the Days Inn and informed him that Mr. Saterstad could no longer use the Days Inn workout room or be on the property "until things were sorted out." (Doc. 1-1, ¶ 86.)

"indicated" to Mr. Saterstad that he would be charged with walking Pepper and Paige without a leash. (*Id.* ¶ 119-120.) A few days later, the Township police department charged Mr. Saterstad for violating a provision of Pennsylvania Dog Law that makes it unlawful for an owner "of any dog to fail to keep at all times the dog under reasonable control of some person." (*Id.* ¶ 122.) The ticket was issued by Sergeant Demmel with the Township's police department. (*Id.* ¶ 132.) Mr. Saterstad contested the dog law charge at trial, during which he learned "for or the first time" that the case was actually about one of his dogs being in his neighbor's yard without permission. (*Id.* ¶ 128.) At trial, Sergeant Demmel testified that he had issued around 25 similar tickets in the preceding two years, which the Saterstads believe to be false. (*Id.* ¶ 132.) Mr. Saterstad's neighbor whose yard the dog entered also testified against him at trial and admitted on the stand that she never complained directly to Mr. Saterstad about the dog. (*Id.* ¶ 130.) At some point, the judge stopped the trial and dismissed the Dog Law charge. (*Id.* ¶ 136.)

The third purported incident of retaliation occurred in late September 2019 when the Saterstads received a "notice of violation" from the Township informing them that they were in violation of Township's Code of Ordinances by having a car with expired tags in their driveway, by having a garage with chipping paint, and by having storage outside their rear alley garage. (*Id.* ¶ 142.) In response, Mr. Saterstad emailed a Township code enforcement official, Director of Community

Development Emerick, informing him that numerous properties in the neighborhood had similar or worse violations, and attaching photographs and addresses of four properties that had vehicles with expired tags in the driveway. (*Id*. ¶¶ 143-46.) The official replied to Mr. Saterstad and explained that "due to the size of the Township and our limited staff, we act on complaints, but do not have the ability to inspect the entire Township." (*Id.* ¶ 148.) Director Emerick also asked Mr. Saterstad for more information about the properties and whether he should treat Mr. Saterstad's email as a formal complaint. (*Id*.) In December 2019, Director Emerick wrote to Mr. Saterstad and informed him that "charges will be filed with the District Justice" if the Saterstads property code violations were not resolved by April 2020. (*Id*. ¶ 151.) On the letter, he copied a Township employee that "resides across the alley" from Plaintiffs. (*Id.* ¶ 152.)

The complaint alleges that the Township and its employees took these actions against the Saterstads in order to retaliate against them for making a complaint and "numerous and vigorous" follow-up requests to Detective Dotts about being the victims of the Craigslist fraud. (*Id*. ¶ 45.) According to the complaint, the Township exercised its manner of law enforcement "selectively and arbitrarily" by arresting and charging Mr. Saterstad over the broom that he thought was being discarded and by providing false testimony against him at the preliminary hearing on the matter. The complaint similarly alleges that the Township enforced its dog law selectively

and arbitrarily by issuing Mr. Saterstad a ticket when it was "clear" to the Township to the officer involved that his dog was not causing any meaningful harm within the purview of the law. Finally, the complaint alleges that the Township selectively and arbitrarily enforced its property code against the Saterstads by issuing them various trivial violations that were not enforced against some other homes around the neighborhood.

In April 2020, the Saterstads filed their complaint in the Dauphin County Court of Common Pleas, and the Township timely removed to this court. (Doc. 1.) Count I asserts a Section 1983 claim "based on Fourth, Fifth and Fourteenth Amendments Violation and Substantive Due Process Regarding Malicious Prosecution," and alleges that the Township violated the Saterstads' Fourth and Fifth Amendment rights by selectively and arbitrarily prosecuting the various charges against them. Count II asserts a claim for common law malicious prosecution based on the same events. Count III asserts a Section 1983 claim "based on Fourth, Fifth, and Fourteenth Amendments Violation Regarding False Arrest and Falsification of Evidence" and alleges that the Township violated the Saterstads constitutional rights, including by arresting Mr. Saterstad without probable cause and by providing false testimony against him. Count IV asserts a claim for conspiracy to violate 42 U.S.C. §1983 and alleges that Township employees entered into an agreement to harass and prosecute the Saterstads in violation of their constitutional rights. Count

V asserts a similar for common law conspiracy. Counts VI asserts claims for punitive damages and intentional infliction of emotional distress based on the Township's alleged harassment of the Saterstads.

In May 2020, the Township filed a motion to dismiss the complaint for failure to state a claim, and the Saterstads filed an opposition brief. (Docs. 2, 13.) The matter is thus ripe for disposition.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In reviewing a 12(b)(6) motion, the court must "accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018) (citation omitted). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The court need not, however, draw unreasonable inferences from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   **DISCUSSION**

### a.   **Section 1983 Claims**

The Saterstads' Section 1983 claims primarily allege that the Township violated their constitutional rights by falsely arresting and maliciously prosecuting Mr. Saterstad for stealing the broom, by selectively and arbitrarily prosecuting Mr. Saterstad for violating the Township's Dog Law, and for selectively and arbitrarily issuing the Saterstads property code violation notices, all in retaliation for Mr. Saterstad urging Detective Dotts by email to treat the Craigslist fraud as a criminal matter. To state a claim against a municipality under Section 1983, the complaint must identify a particular "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," and also

allege facts to create a plausible inference that the policy or custom caused the underlying constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 94 (1978). A "policy" is made where "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict," and a custom is an "act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (cleaned up).

Here, the complaint fails to adequately allege that Plaintiffs' constitutional injuries were the result of a relevant policy or custom by the Township. Plaintiffs' allegation that the Township had a custom, policy, or practice "of a manner of law and code enforcement used against Plaintiffs arbitrarily and selectively in retaliation because Plaintiffs chose to speak out against injustices they feel are occurring" merely re-states their underlying claims and is much too conclusory to state a claim for municipal liability. A plaintiff must provide more than generalized and vague assertions to support that a policy or custom caused their injury, and the complaint does not allege facts that would permit an inference that the Township had an established policy or custom of retaliatory enforcement, or that it engaged in a pattern of practice such that Township policymakers disregarded a known and obvious consequence that an omission in their training program would cause its

employees to violate citizens' constitutional rights. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

The Saterstads do not aver any other instances of unconstitutional retaliation beyond those involving the charges that they received, which as pled do not give rise to municipal liability under Section 1983. While the Saterstads believe that the charges against them demonstrate the Township's pattern of practice of enforcing its laws and codes in a retaliatory manner, nothing in the complaint supports that belief. The charges were all issued more than nine months after Mr. Saterstad politely urged Detective Dotts to pursue the Craigslist fraud as a criminal matter. Detective Dotts had no apparent personal involvement in any of the three charging decisions, and the complaint does not allege facts to support that those officials who were involved had any knowledge of Mr. Stadstad's prior interactions with Detective Dotts. It also appears that each of the charges were initially spurred by private individuals that came forward to the Township and complained about the Saterstads for one reason or another. As such, even if Mr. Saterstad's arrest did lack probable cause, and even if the dog leash ticket and property code violations were rarely issued out to others, the complaint does not support an inference that any of the incidents were retaliatory, suggestive of an unlawful pattern of practice, or anything more than the product of discrete enforcement decisions by individual Township employees.

The Saterstads' Section 1983 claims also suffer from other issues. The complaint fails to state Section 1983 malicious prosecution claims under the Fourth Amendment because it does not contend that the Saterstads suffered a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Mr. Saterstad was booked and released following his arrest, and there is no indication that he was ever incarcerated or subjected to any type of onerous non-custodial restrictions while the charge was pending.[3] *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). The same is true with respect to the Dog Law and property code violations, neither of which resulted in incarceration or non-custodial restrictions.

In addition, the Saterstads' claims for conspiracy to violate Section 1983 fail to state a claim because the complaint only offers conclusory allegations that a conspiracy existed among Township employees. *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (finding that conspiracy must be pled with specificity). Though the existence of a conspiracy may be established through circumstantial evidence, the events outlined in the complaint do not permit such an inference. As discussed above, the Saterstads' charges were issued several months after Mr. Saterstad

---

[3] Mrs. Saterstad also does not have standing to assert a Section 1983 claim based on her husband's arrest and prosecution for stealing the broom. *See Agarwal v. City of Jersey City*, 388 F. App'x 199, 202 (3d Cir. 2010).

emailed Detective Dotts and in response to specific complaints. There is no indication that the Saterstads were targeted for retaliation by the Township or any of its employees, or even that Mr. Saterstad's persistent but respectful emails aggravated anyone in the first instance. [4] The complaint therefore fails to adequately plead the existence of a conspiracy.[5]

---

[4] In fact, the complaint suggests that Detective Dotts was quite responsive to Mr. Saterstad's concerns, and that he responded to Mr. Saterstad's emails and concerns with politeness, professionalism, and a willingness to assist the Saterstads despite the district attorney's decision not to pursue the case as a criminal matter.

[5] The Saterstads' implicitly-pled claim for First Amendment retaliation claim must also be dismissed because just as the complaint does not plead facts to support that Township employees entered into an agreement to unlawfully retaliate against the Saterstads, it also does not plead facts to support any "causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). To establish the requisite causal link, a plaintiff must show that the protected activity was a substantial or motivating factor in the defendant's alleged retaliation, which in turn may be demonstrated through an unusually suggestive temporal proximity, a pattern of antagonism coupled with timing, or from evidence gleaned from the record as a whole. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996.) Here, no unusually suggestive temporal proximity existed between Mr. Saterstad's emails to Detective Dotts and the charges against the Saterstads, and the complaint does not allege facts to support a pattern of antagonism coupled with timing. The Saterstads do not aver that they had any interactions with Detective Dotts in the intervening nine-to-thirteen-month period between Mr. Saterstad's email exchange and when the various charges were issued, and they do not contend that Detective Dotts had any involvement in the charges themselves. Moreover, the complaint fails to allege any specific facts indicating that a single relevant individual actor or broader Township agency in this case was aware of Mr. Saterstad's seemingly benign and respectful email exchange with Detective Dotts, and the Saterstads' allegations do not support a reasonable inference that any of the charges against them were due to a retaliatory motive by the Township or any of its employees or agencies. The Saterstads' claim for First Amendment retaliation will therefore be dismissed without prejudice. *See Kundratic v. Thomas*, 407 F. App'x 625, 628 (3d Cir. 2011) (affirming the district court's dismissal of First Amendment retaliation claim where nothing in the complaint suggested that the defendant's conduct "was propelled by a retaliatory impulse or anything other than their duty to enforce Pennsylvania law within the context of a discrete disturbance").

The Saterstads' equal protection claims suffer from similar problems. To state an equal protection claim based on selective enforcement, the plaintiff must show that he or she was treated differently than other similarly situated individuals, and that the treatment was based on an unjustifiable standard or some other arbitrary factor, or to prevent the exercise of a fundamental right. *See Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005). To state an equal protection claim based on a "class of one" theory, the plaintiff must show that the defendant treated him or her differently than similarly situated individuals, that the defendant did so intentionally, and that there was no rational basis for the different treatment. *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

While the Saterstads allege that they were treated differently than similarly situated individuals insofar as they claim that the dog law ticket they received was rarely issued to others, and that the code violations notices they received were for issues that went overlooked elsewhere in the neighborhood, the complaint does not plead facts which would suggest that that any difference in treatment was the result of any type of improper motive, arbitrary disparate treatment, or without rational basis. The complaint reflects that Director Emerick explained to Mr. Saterstad that the Township enforces its property code based on individual complaints, and when Mr. Saterstad pointed out violations by other properties in the neighborhood, Director Emerick asked if he was making a formal complaint. The Dog Law

15

violation also appears to have been issued after the Saterstads' neighbor, who later testified against Mr. Saterstad, complained to the Township about the Saterstads' dog being in her yard.

As outlined above, the Saterstads do not allege facts to support their claims that retaliation play a role in any of the charges, which by all appearances resulted from discrete enforcement decisions by individual law and code enforcement officials discharging their duties to respond to complaints. The complaint does not permit a reasonable inference to support the Saterstads' core theory that the decisions were intended as retribution for the rather unremarkable email exchanges between Mr. Saterstad and Detective Dotts, particularly given Detective Dotts' apparent lack of involvement any of the charges. For all these reasons, the Saterstads' Section 1983 claims will be dismissed without prejudice.

### b.  <u>State and Common Law Claims</u>

The complaint also asserts state and common law claims against the Township for malicious prosecution, conspiracy, punitive damages, and intentional infliction of emotional distress. As with their Section 1983 claims, the Saterstads' common law malicious prosecution claims allege that the Township maliciously prosecuted them by the various criminal and civil charges and notices of violations without cause. "In Pennsylvania, a plaintiff alleging common law malicious prosecution must show (1) the defendants initiated a criminal proceeding; (2) the criminal

proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (citing *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996)).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). The issue of whether probable cause existed is generally a question of fact reserved for the jury. *See Merkle*, 211 F.3d at 788; *Laphan v. Haines*, 695 F. App'x 662, 664 (3d Cir. 2017).

The Saterstads fail to state claims for malicious prosecution based on the Dog Law and property code violations because the complaint does not support an inference that either charge was brought without probable cause. The Saterstads also do not contend that any proceedings were initiated in connection with the property code violation notices, and indeed, the Township made clear to the Saterstads that they had several months to remedy the issues and that charges would only be filed if they failed to do so. On top of all this, Mrs. Saterstad also fails to state a claim for malicious prosecution based on the broom theft incident because the Township only

initiated the proceedings against her husband. *See Agarwal v. City of Jersey City*, 388 F. App'x 199, 202 (3d Cir. 2010).

Mr. Saterstad, however, does adequately state a claim for malicious prosecution based on his prosecution for stealing the broom. The complaint alleges that the Township arrested and initiated a criminal proceeding against Mr. Saterstad for stealing a used broom after he explained to the officers that he thought it was being thrown away and offered them specific facts to support his version of the events; that the officers lacked probable cause for the arrest; and that the officers acted with malice by providing false testimony against him and in favor of the purported victim of the theft, who boasted that he was a friend of the Township's police chief. These allegations are sufficient to state a claim for malicious prosecution, and the Township's arguments to the contrary are not persuasive. The Township's contention that probable cause existed for arresting and prosecuting Mr. Saterstad relies on a police report that is beyond the pleadings and may not be considered on a motion to dismiss. Further, while the Township is correct in arguing that the district attorney's office was the entity that actually initiated Mr. Saterstad's prosecution, that fact does not preclude Mr. Saterstad's claim for malicious prosecution the allegations in the complaint that Officer Eckenrode provided false testimony against him. *See Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014). Mr.

Saterstad's malicious prosecution claim based on the broom theft may therefore move forward.

Next, the Saterstads' civil conspiracy claims, which allege that the Township conspired to harass the Saterstads by issuing them civil and criminal violations for retaliatory reasons, suffer from the same issues as their claims for conspiracy to violate Section 1983. Conspiracy must be pled with specificity, and the complaint neither delineates an express agreement and nor alleges facts from an agreement to act unlawfully may be inferred. The Saterstads' civil conspiracy claims will therefore be dismissed without prejudice.

The Saterstads also assert claims for intentional infliction of emotional distress. Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate the following elements: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused emotional distress; and (4) the resultant emotional distress was severe. *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982). At the pleading stage, the court's role is to determine whether the conduct alleged can be reasonably regarded as sufficiently extreme to constitute "outrageousness" as a matter of law. *Simpson v. Phila. Sheriff's Office*, 351 F. Supp. 3d 919, 926-27 (E.D. Pa. 2019). "Outrageous conduct" is limited to behavior that goes possible bounds of decency and is regarded as

19

"atrocious" and "utterly intolerable in a civilized community." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979).

The conduct alleged in the complaint does not meet this high standard of intolerability. The Saterstads' most serious developed allegation, that Mr. Saterstad was arrested for stealing a broom without probable cause and that police officers offered subsequently offered false testimony against him, does not rise to the level of extreme and outrageous conduct necessary to support a claim for intentional infliction of emotional distress as a matter of law. *See Gilbert v. Feld*, 842 F. Supp. 803, 820 (E.D. Pa. 1993); *Sieger v. Township of Tinicum*, 1991 WL 197315, *5 (E.D. Pa. Sept. 30, 1991); *Gower v. All but Furgotten Humane Rescue*, No. 18-CV-953, 2019 WL 3037851, at *8 (W.D. Pa. July 11, 2019). The Saterstads' other allegations fall even further from that standard, and while their theory that Township employees made a specific plan to harass and maliciously prosecute them may come closer to meeting the "outrageousness" threshold for a claim for intentional infliction of emotional distress, they do not provide sufficient facts to support their theory for the reasons explained above. As such, the court will dismiss the Saterstads' claims for intentional infliction of emotional distress without prejudice.

Finally, with respect to the Saterstads' claim for punitive damages, the Township correctly argues that punitive damages are not available against a municipality under Section 1983. *See City of Newport v. Fact Concerts, Inc.*, 453

U.S. 247, 259 (1981). The Township, however, does not argue or cite any authority to support that a plaintiff is barred from recovering punitive damages against a municipality under Pennsylvania. Accordingly, the court will dismiss the Saterstads' claims for punitive damages to the extent they seek recovery under Section 1983. Mrs. Saterstad's claim for punitive damages must also be dismissed because she has not adequately stated any substantive claims against the Township or otherwise alleged facts showing entitlement to punitive damages. Mr. Saterstad's claim for punitive damages under state law may move forward.

## IV.   **CONCLUSION**

For the reasons outlined above, Defendant Derry Township's motion to dismiss will be denied to the extent that it requests the dismissal of Mr. Saterstad's claims for common law malicious prosecution and punitive damages and granted in all other respects, and Plaintiffs will be granted leave to amend their complaint. An appropriate order shall follow.

*s/Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 20, 2021

21